is number 21-11280 Robinson versus Sauls et al. You may begin when you're ready. My name is Dallas here on behalf of the plaintiff appellate Monteria Robinson. The case before the court, your honors, is a claim of excessive force, not one of no force. So the law in this case requires us in the district court to determine if the amount and the level of force that was used was necessary to the situation that the officers faced on the day in question. One issue in this case, based on the evidence viewed in light most favorable to the plaintiff, is the credibility of the officers in question. A reasonable jury could easily conclude that these officers lied about the central issue of this case. That is the use of deadly force against an individual who was not resisting. I'm referencing, of course, the flashbang situation in this case. The key is that the officers provided statements under oath to the GBI investigators indicating that they had not fired any shots after they deployed a flashbang in this case. Once video did come out, of course these officers did not have any body cams and were not permitted to have any body cams. Once video did come to light, the GBI reinvestigated and asked them this question again. Did any shots get fired after the deployment of the flashbang? And these officers indicated again it did not and tripled down on that in depositions. However, a review of the video, the bystander witness video, indicates that the officers deployed a flashbang and then approximately 22 seconds later there was a round of gunfire. And Officer Monet can be seen on that showing a reaction of startlement and looking back at the building in which Mr. Robinson was located. This is an important issue. This is the heart of this issue because the District Court failed to credit the plaintiff's evidence and to view the facts in the light most favorable to the plaintiff in granting summary judgment. I've got a question in regard to that. The government identifies several conflicts in the expert reports for your side and also some concerns about the admissibility of some of that evidence. Do you think that the video is enough to create an issue of fact for a jury even if you were to set aside that disputed evidence? Yes, Your Honor. I believe that the video itself is enough in that it creates questions of credibility of the only witness. And of course, unfortunately, this is a situation where it's like he said or we said he's dead. The only witnesses that can give firsthand knowledge are the officers who used deadly force and killed Mr. Robinson. So we have to look at the other evidence. And I do believe evidence that they are already lying about not using deadly force against what they acknowledge to be at that time an unconscious and unresisting suspect brings into question statements that they continue to use deadly force over and over against Mr. Robinson. Over 100 shots fired. Over 76 bullet lacerations on Mr. Robinson's body. That they continue to do so because Mr. Robinson continued to present a firearm at them and presented a threat. That question is already brought in doubt by the fact that the officer's credibility is in doubt. That being said, there is some issues that the judge in the district court weighed the evidence and determined that some expert testimony was unreliable or wasn't credible to the district court judge's mind. That is inherently a jury question. There is some conflict in testimony. The defendants are saying that Mr. Robinson was presenting a firearm once he had fallen. But the plaintiff's expert, Dr. Small, stated that Mr. Robinson received injuries to his arm and hand that would render him incapable of ripping, lifting, and firing a weapon. But could the officers reasonably have, can we expect that the officers would have known that at the time in that situation? The key, Your Honor, is the officers are stating that Mr. Robinson was lifting a firearm, pointing it at them, and at that point they were reengaging and firing on Mr. Robinson again. If Mr. Robinson is simply incapable of doing that, that raises the question that if he can't do it and they're saying he did, are they lying again? And a reasonable jury could find that, yes, they are lying again, particularly in light of the fact that we already have evidence that they've lied about a use of force after the flashbang grenade. I thought that the expert testified that he could not have fired from a prone position, but the officers testified that he came up again kind of into a sitting position. So that testimony is not really inconsistent, is it? Yes, Your Honor. The testimony was that Mr. Robinson could not have gripped, lifted, or fired a firearm. The officers were stating that he was lifting it up after he had been brought to a prone position. But the officers all testified Mr. Robinson never left a prone position once he was shot in the lower legs and fell. The testimony is simply that Mr. Robinson must have received the injuries to his arm and hands at a time in which he was standing. It could not have occurred while he was prone. The defendants testified, specifically Doyle testified, that his first shots were to Mr. Robinson's upper body, his chest and arm, and his second set of shots was to Mr. Robinson's lower body, at which point he fell. This information was confirmed by Heinz and Hutchins, that the officers first fired on his upper body, then fired on Mr. Robinson's lower body, which caused Mr. Robinson to fall to the floor, the top of the stairs, and then they continued to fire on him at that point in a prone position. But didn't your expert, Dr. Small, explicitly say that he wasn't offering any opinion on when the hand injuries occurred? Yes, Your Honor, and it is very true that the expert cannot independently, just looking at Mr. Robinson's body and the medical records, determine the occurrence or when each individual shot occurred. That being said, bringing the evidence together, the evidence was Dr. Small said those injuries could not have occurred while Mr. Robinson was lying supine. The defendants stated that Mr. Robinson was upright when they fired on him, and then they fired on him on the lower body, at which point he fell and never rose again. So the injuries had to occur before Mr. Robinson became supine. So the entire time Mr. Robinson was supine, those injuries had to have existed and would have made it impossible for Mr. Robinson to raise, grip, or otherwise display a weapon to justify the continued use of force. And the key here, Your Honor, is that there is, in our position, and we've laid out the time points at which each of these shots occurred, a continued use of force over seven to eight times after Mr. Robinson was supine, each of which permitted sufficient time for the officers in question to reassess whether or not Mr. Robinson was presenting any threat and to determine that he did not, as he was not presenting a firearm, and he was not upright, moving, or in any other way resisting the arrest at this particular point. Let me ask you again about the shot that occurred after the flashbang, assuming you can create an issue of fact on that based on the video. Who is liable for those shots? In this particular case, Your Honor, Mr. Robinson was determined to have been deceased as a result of multiple gunshot wounds. The evidence has linked each of the firearms of each of the shooting defendants, that's Hines, Hutchins, and Doyle, to bullets that were found within Mr. Robinson's body. So, in the concurrent causation case, the individual defendants are jointly and severally liable for the indivisible injury that is the death of Mr. Robinson. The defendants have, when listening to the video, identified a sound that they do conclude sounds like firearms going off and does sound like firearms that are consistent with the weapons held by the defendants. And indeed, one of them, I believe it was Officer Monet, stated that it is either a burst fire weapon or it could have been multiple weapons from the, you know, shots were occurring from multiple different weapons. Where's that statement in the record? I apologize, Your Honor, that was in Monet's deposition. It's in, the ECF has escaped me, if I can have just a moment. You can tell us in your, you can tell us in your rebuttal time if you wish. Of course, I will make sure I do that. So, under the concurrent causation, Your Honor, it would be all of them that are jointly and severally liable for Mr. Robinson's death. I understand that we know all of the officers fired into his body at some point in time, but do we know anything about who fired the shots after the flashbang? Unfortunately, the evidence is consistent with it being either one or all of the officers. There is no specific video from inside the room that would demonstrate who specifically fired that weapons, nor is there any surviving witness other than the defendants. Is there any testimony that it sounded like a burst fire? I apologize. Is there any testimony that it sounded like a burst fire? Yes, and again, it would be Mr., I believe it is Officer Monet who was asked, does that sound like a burst fire consistent with the burst fire weapons? And he's the one who said yes or multiple weapons fired at the same time. And the concern, of course, is that it's three, it sounds like approximately three shots within a very short period of time. So, either a burst fire, separate weapons fired shortly after each other. Would the conspiracy theory circumvent the problem of not being able to identify who shot after the video flashbang? Yes, Your Honor, I believe the conspiracy is specifically going to circumvent that concern by making all members of the conspiracy responsible for the actions of any individual who may have fired. All right, let me ask you this. I think that you've got a real strong point that that burst of fire 23 seconds after the flashbang creates a genuine issue, the fact that at least one of those officers fired after the flashbang and after they all testified that he was no longer a threat. It does not seem to me that that supports your theory that one of the officers at least ran up the stairs and shot him point blank in a downward motion. If that were the only evidence, if this video was the only evidence, we conclude it would rise to the level of creating a genuine issue of fact. Would that, namely merely shooting after they knew he was no longer resisting, would that create a genuine issue of fact to get to a jury? Yes, Your Honor, I believe it would. At this point, all the officers have testified that Mr. Robinson was unconscious and posed no threat. They all specifically say he posed no threat. So the deployment of deadly force at that time, I believe, would create a genuine issue of material fact that a jury has to determine. Does that evidence of the deployment of force, do they reasonably believe it was more likely than not they did use it when he no longer posed a threat? I'm going to ask you two more real quick questions. Quickly summarize the evidence for me that supports a genuine issue of fact that there were bullets embedded in the carpet on the landing on the second floor. We know that that private investigator's investigation was not in the record and he didn't testify, but apparently Dr. Baden looked at the photographs he took. Is there enough evidence there? And if there is, summarize it real quickly for me. Of course, Your Honor. So the initial issue is there was covered bullets found at the scene by the investigator McCall. Those bullets were turned over to the GBI. We do have the GBI report investigating those particular bullets. There's also photographs of the bullet recovery. That was in the record. It includes bloodstains. Dr. Baden did examine both Mr. Robinson's medical reports, the body and the wound tracks, or I'm sorry, the wound image, and those photographs of the recovery of those bullets, including the bloodstains, and was able to determine the bullets were located on the floor under where Mr. Robinson's body was located by the fact that blood pooling occurred around them. And the GBI did find that there were fibers in the bullets that were recovered that were consistent with the carpet in the apartment, I'm sorry, the apartment in question. That doesn't, it seems to me, support that they were fired from above down into the landing. No, Your Honor. That particular testimony was Dr. Baden's opinion based on reviewing Mr. Robinson's medical records, including the autopsy that was conducted of Mr. Robinson and wound tracks he identified as entry and exit wounds on Mr. Robinson. So the only evidence that supports the shooting from above in a downward direction has to do with the expert testimony about the wound track. Yes, and it wasn't specifically wound tracks. It was the identification of entry and exit wounds that lined up. There was not an actual wound track dissection that was done during the autopsy of Mr. Robinson. Okay, okay. But we don't have the bullets, right? I'm sorry, Your Honor. The bullets are not in evidence, right? They are, Your Honor. They were part of the GBI's report, and they are maintained by the GBI. Okay. But the two bullets that the investigator found embedded, so the district court discounted that evidence altogether. Was the district court wrong in that regard? Yes, Your Honor. I believe the district court was wrong. Those bullets were entered into evidence. They were examined by the GBI. There was photographs of their recovery. There was sufficient evidence, I believe, to consider those bullets and the evidence that they represent. While there may be some questions about the fact that the investigator, investigator McCall, didn't testify, those bullets were examined. They were identified. They were linked to the scene in question by fiber evidence, and they were consistent with the bullets. But there is no evidence that they were embedded in the carpet or the floor, is there? Yes, Your Honor. There's the photographs of their recovery as well as the fiber consistent with the carpet in question. Does the photograph of the recovery show it being taken out of an embedded position? Yes, Your Honor. It shows the carpet being peeled back. It shows the bullet embedded. It shows the investigator inserting a knife and removing the bullets. And did the district court exclude that information from evidence or merely set it aside as a matter of persuasiveness? The district court merely disregarded it as a matter of persuasiveness, Your Honor. Thank you. Thank you very much. Thank you. You're answering the court's questions, so we'll give you your full time for rebuttal, five minutes.  Thank you very much. Ms. Cody. Good morning. May it please the court. Darcy Cody on behalf of the defendant officers in the United States of America. I want to start first with the two bullets that you were just addressing in terms of the bullets in the landing. There is no admissible evidence in the record related to those two bullets because Investigator McCall never entered a report and never submitted anything. Well, Mr. McCall and the plaintiff's counsel ultimately turned the bullets over to the GBI, and they are in the record from GBI. There is absolutely no chain of custody whatsoever, and there is no admissible evidence as to where the bullets were found, how they were found, who they were found by, or anything related to them. What does the evidence show about, he just said that the pictures apparently taken by the medical examiner that show the medical examiner or his team lifting the carpet and taking bullets out from an embedded position. That was not done by GBI or the medical examiner. That was done by a private investigator after GBI undertook to investigate the scene and cleared the scene. Plaintiff's contention is that GBI missed two bullets that they went back and found later, and that those were in the landing. Say that again. I'm sorry. Ms. Robinson hired a private investigator, Investigator McCall. He went to the apartment after GBI fully investigated the scene and removed all the bullets and claims that he found two additional bullets that GBI never found that were in the landing. GBI did not find them. There is no chain of custody. So they are in the record, but no chain of custody. No chain of custody, no information about how they were found, et cetera. Was he, your opponent, just now talking about a video taken by the investigator that showed lifting the carpet and so forth? I'm aware of still photos, but again, I'm not aware of any video in the evidence that shows any of that, and it's not in the record. Is there a picture in the record of the landing with the carpet and showing bullets in it? There are pictures that are not admissible where it came from, something that we don't have anybody to substantiate because it came from Mr. McCall, and Mr. McCall wasn't identified as an expert in this case, and his report was never submitted or turned over as an expert report in this case. Are there photos of the landing taken by the GBI team at the time that they cleared the scene? There are. And is there any evidence of the bullets in those photos? There are not. I want to turn next to the questions that you raised regarding the unexplained noise after the flashbang. There is no genuine issue of material fact based on the record. There is no evidence from the plaintiff or the defendant in this case as to what exactly those sounds on the video are, where they came from, or who actually fired them, and also whether they actually hit Mr. Robinson. But if that's true, then wouldn't it be equally true that there's, I mean, how much evidence is there just from the video of what the rest of the gunfire sounds are? It seems pretty surprising that there would be that much gunfire, and then, from what I can tell, an identical sound, and we would conclude, well, who knows what that was. Discovery in the case, at the close of discovery, plaintiffs never had an expert analyze the sounds on the video, and the video, as Your Honor indicated, captures the sound of gunfire fired by these three officers throughout the incident. But we don't have anything by an expert saying, yes, these are, in fact, gunshots. We don't have anything saying how many gunshots were fired. We have nothing saying what type of gun is capable of making that noise, or whether that what appears to be potentially three gunshots is consistent with the shots that were fired before, and whether any of the defendants, and we know what type of guns they fired, were capable of making those sounds. I have listened to that, looked at that video and listened to it. I'm sure all three of us have probably, but it sounds to me just exactly like firings that occurred before the flashbang. We have no expert, but why couldn't the jury listen to that and conclude that one of the officers did, in fact, fire 23 seconds after the flashbang? There has to be evidence that one of the officers did that. It can't be the flip of a coin, as this Court talked about in James v. Otis Elevator. It has to be something based on qualified immunity where there is evidence that a specific officer did so, which means we would need to know, Your Honor, these sound like gunshots to a layman. That may be so. Well, they sounded like gunshots to the officers, too, in fairness, didn't they? Yes. They testified to that. Yes. But what we don't know, Your Honor, is what type of gun is capable of doing that. And beyond that, if you figure out what type of gun is capable of making that sound, which of the officers carried that type of weapon? And is that same sound heard on the video earlier? And that was plaintiff's burden at the summary judgment stage to come forward with evidence that one of these defendants fired shots after Mr. Robinson was incapacitated. Didn't Doyle say that he used his gun on a burst setting? No. Doyle's gun was set on automatic and would be capable of it, but there's no evidence in the record whether that sound would be a sound that is consistent with the sound that would be coming from Doyle's weapon. Plaintiff has not produced that in the record. Would not the conspiracy allegation circumvent the problem of not being able to identify who was the shooter after the flashbang? It would not, Your Honor, because there's no evidence of a conspiracy. In order to have a conspiracy— What about the evidence that the officers did lie? They said no officers shot after the flashbang, and the video perhaps raises a genuine issue of fact that one of the officers did, and the additional fact that all of the officers had the same story or version after the fact. In order to have a conspiracy, there has to be a meeting of the minds, and there has to be an agreement and a decision to proceed with a conspiracy, and so there is no evidence of a conspiracy here. A combined agreement to cover up is not enough to infer an agreement ahead of time? The conspiracy would have to be that, according to the conspiracy that was alleged, had nothing to do with after the fact. The conspiracy alleged is that these officers set out, went to the apartment with an agreement to kill Mr. Robinson. There is no alleged conspiracy by plaintiff after the event in question. I want to also note that, Your Honor, Judge Anderson, you asked a question about, well, what if they stayed at the bottom of the steps and fired from there? That is, again, not plaintiff's theory. Plaintiff's theory is that somebody walked up the steps and fired directly into Mr. Robinson, and it's not just the defendant's testimony against, I believe, as counsel put it, somebody who is no longer here, a dead person, because the forensic evidence corroborates their testimony as well. The forensic evidence by the medical examiner shows that there was no sooter stippling on the body showing there were no close-range shots that were fired. But do you think that a jury has to be able to find that excessive force took place, or do you think a jury has to be able to find that excessive force took place exactly as alleged by the plaintiff? The plaintiff's claims are the basis of the lawsuit. So on summary judgment, we are taking plaintiff's claims at their face, and plaintiff is required to produce evidence to meet the burden of proving their excessive force case, and they have not done so here. So you think that they have to present enough evidence for a reasonable jury to conclude that one or more of the officers stood over Mr. Robinson and shot him rather than shot him from the doorway after the flashbang? Well, they would have to present evidence that they shot him, that he was shot, not just that they discharged their weapon. So the fact that if you assume that those three rounds were bullets that were fired and you assume that they were fired from the base of the stairs, there has to be some evidence as to that they hit Mr. Robinson, and there is no evidence that they hit Mr. Robinson. How do you differentiate those shots from the, I think it was either 72 or 76 times that he was hit? How can you tell whether those three shots, it sounds like, are three of those bullets? Fifty-nine shots, and the question becomes, again, plaintiff's theory of excessive force, something is not excessive force if it's not, if they have not done it in the face of something that's not a deadly threat. And in this case, all of the shots that were fired and that hit Mr. Robinson were done, according to the officers and according to all of the evidence, when Mr. Robinson posed a threat. This was somebody who continued to raise and point his weapon at them. Right, so I understand that's your argument. Let's say, and you will not be conceding anything by answering this question, but let's say that we think that there is evidence of a burst fire of shots after the flashbang. Would that be enough to create a material issue of fact about whether excessive force was used after Mr. Robinson was incapacitated? Or, given the theory that's been outlined in the case, someone in the media, that there was a direct shot from standing over Mr. Robinson, would enough evidence to support that theory need to be in place for this to go to a jury? The latter. And there is not evidence to support that theory. There is no evidence that anybody walked up the steps and stood over Mr. Robinson and fired. As the Court made reference, plaintiffs' own experts disagree. There's no evidence of sooter-stippling. And in addition, when GBI investigated, GBI did not find any shell casings fired from the defendant officers above the third step. There's no shell casings on the top landing, none in the upstairs bedroom, none on any step below the third step from the bottom, which is physical evidence that no one walked up the stairs and shot Mr. Robinson, as plaintiff claims. With respect to the shots that occurred after the flashbang, the plaintiff also advances a theory of a failure to intervene. Explain to me why you don't think that is valid.  As you've referenced, the shots happen extremely quickly to the extent that the unresolved noise is gunshots, and there would not have been an opportunity to intervene by any officer. Just based on the timing between when the flashbang went off and the shots were fired? Exactly. I mean, there is no contention that any of the other officers knew somebody was going to fire or anything of that sort. There's simply a contention that 22 seconds after the flashbang, there is a sound that appears to be gunfire. There wouldn't be time for somebody to intervene if they did not realize something was happening. And what the testimony of the defendants is, is while they cannot say what the noise was not, or what it is, they have told you what it's not. What they've said, and this is from Officer Hines, I was at the base of the stairs, nobody was on the stairs, nobody was forwarding me, and no one fired that was next to me, or I did hear anyone fire that was next to me after the flashbang. That was from his deposition. Isn't that just a credibility determination? It's not a credibility determination when you match it up with the corroborating physical and forensic evidence. So it's not simply a statement by the officers where it could be something that's unsupported. We have physical and forensic evidence that supports it. We have GBI who investigated the scene and says, we don't think any shots were fired from anywhere but the base of the stairs, and 59 shots was not excessive in this circumstance. So there's other evidence that corroborates their statement. I still want to make sure that we're talking about the same question, though, because if the theory that's being asserted, whether or not you think that's the theory that the plaintiff has actually asserted, but if the theory that a few of us have proposed here is that perhaps an officer shot from the base of the stairs after the flashbang, does anything in the evidence exclude, the ballistic evidence exclude, that possibility? There is no evidence to support that conclusion. There's also no evidence to rule it out. But again, what I would say— Why didn't the shot after the flashbang support that theory? I'm sorry, Your Honor? Why does not the shooting 23 seconds after the flashbang support the theory that at least one officer shot from the bottom of the stairs after the flashbang? The mere existence of a sound on a video is insufficient to create a material— an issue of material fact, particularly when, as here, there's evidence that could have been gathered, but that was not gathered by the plaintiffs to analyze what that noise is and whether it could have been filed by a single defendant. There was reference to concurrent causation, but concurrent causation is not when you're alleging a single person fired and that those shots are the excessive force. So if you assume that the only shots that would be excessive force would be that unresolved noise after the flashbang, there has to be evidence that one of the defendants actually shot those shots or that they had a gun capable of firing those shots. And in this case, plaintiffs failed to put any evidence into the record to that effect. I see that I'm out of time. I don't know if the Court has any other questions. No. Thank you very much, Your Honors. To answer the question you had put forth to me earlier, at Monet's deposition in ECF 238, page 56, line 21 through 57, line 11, is the portion of Monet's deposition in which he says the subject noise on the audio – I'm sorry, on the video – could be multiple gunshots from multiple weapons as well as a burst fire capable weapon. Thank you. The issue here, Your Honor, is the idea that an expert would be needed to testify as to what is a gunshot baffles me. I would never have thought that would be an issue. Any lay person can identify what sounds like gunshots, particularly when it is an identical sound to previous gunshots that are agreed by all parties to be gunshots. In addition, I would submit that these officers would themselves be considered experts and, to their opinion, this did sound like gunshots and, indeed, gunshots from either a burst capable weapon or, as Monet said, from multiple weapons consistent with the weapons fired by the defendants. How do you respond to her argument that evidence of collusion after the fact cannot support a conspiracy before the fact to shoot excessively? I believe that, Your Honor, is inconsistent with the case law in this circuit, that evidence of consistent stories and agreements to tell consistent, inaccurate, or lies is evidence of conspiracy. That is the Rankin case we cite within our briefs. The very fact that these officers consistently, repeatedly, and under oath made a statement that no shots occurred after the flashbang and then the video evidence shows what is evidence of what any reasonable jury could conclude is sounds of gunfire, and with the video evidence showing Monet in startlement looking right back at the very building in which Mr. Robinson sits and which these officers have repeatedly shot him prior to that point, the evidence is sufficient that a reasonable jury could find that gunshots did occur after the flashbang was fired, and that's evidence of conspiracy in the consistent lies. It is also evidence of excessive force since they concede that he was not posing a threat after the flashbang. So under our case law, does a jury need to have enough evidence to conclude that excessive force occurred at all, or excessive force occurred under the theory that you are outlining? Yes, Your Honor, and that's a very good point. The case law requires and the law requires that the plaintiff prove that the level of force, the level and intensity of force used, was not necessary to the situation faced by the officers. It is not necessary that the jury says this particular theory that the plaintiff advanced was right or wrong. It helps if they believe us, but as long as a jury finds that the force used by these defendants was excessive, meaning not consistent with the force needed in the particular situation faced by the officers, the jury is fully capable of finding for the plaintiff in a violation of the Constitution by excessive force. Now, the plaintiffs have provided one possible way of explaining what the evidence is. The jury is free to make a different determination. I mean, is that possible when we have, I mean, I suppose the bullets are in the evidence in some way with the GBI, but there, as the opposing counsel pointed out, there is no evidence about chain of custody. There are photos taken on the day of the investigation by the GBI do not show any evidence of those bullets. I don't think that a jury has any reason to conclude that those bullets existed. And so given that, do you have any evidence for your top-of-the-stairs theory as opposed to the bottom-of-the-stairs theory? Yes, Your Honor. There is photographs of the scene on the day in question with defects in the carpet that exist. With what in the carpet? Defects, holes. Photos taken by whom? By the GBI. And where are those photos in the record? They're in the GBI file that's in the record as an exhibit, and the exhibit number, I believe, was 13, but I can't be sure. But that being said, while the evidence may not be admissible in its current form, obviously Mr. McCall or Investigator McCall could be called as a witness to testify as to how it came, and we do have the fact that the GBI records that Investigator McCall turned the bullets over to him. But he didn't submit. I'm getting mixed up. Did he submit an expert report or any sort of report? No, Your Honor, and we would not be preferring any expert testimony on the behalf of Mr. McCall or Investigator McCall, simply testimony of him pulling back the carpet, taking the photos of the bullets, and removing them. And I don't believe it needs an expert to take a photograph. Would that be admissible at this point, at this stage? I believe, Your Honor, it would. He's a witness, a fact witness. So the pictures in the GBI file that show bullet holes in the carpet, those pictures came from McCall? No, Your Honor, those are pictures taken by the GBI in the investigation. There is no direct link between the holes in the carpet and the specific photographs taken by Investigator McCall. I don't want to misrepresent that there is. There are just photographs taken of the scene that do show holes in the walls, holes in the floor, and then obviously the photographs of Investigator McCall showing him recovering bullets, bullets that were consistent with the firearms fired in this case by the defendants and bullets that contained fibers consistent with the carpet in question. So with that being said, Your Honor, I see my time is up. If no further questions, I would simply ask the Court to reverse the district court and remand this case for trial. Thank you very much. The Court will be in recess for 10 minutes while we rearrange the panel.